UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAMON DOCK,

    Plaintiff,

                                                          Civil Action No. 17-11421
                                                          Honorable Robert H. Cleland
v.                                                      Magistrate Judge Elizabeth A. Stafford

GEORGE WILSON JR., *et al.*

    Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT
[ECF NO. 21]**

**I.   Introduction**

Plaintiff Damon Dock, proceeding *pro se*, sues current and former employees of the Federal Correctional Institution (FCI) in Milan, Michigan, as well as the United States, under the Federal Torts Claims Act (FTCA), 28 U.S.C. §§ 1346b(b), 2671, *et seq*., and *Bivens v. Six Unknown Named Federal Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971). [ECF No. 1].[1] Defendants have filed a motion to dismiss and for summary

---

[1] The Honorable Robert H. Cleland referred all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). [ECF No. 8].

judgment alleging that Dock's FTCA claims were not timely filed, that Dock failed to exhaust his administrative remedies with respect to some claims, that Dock cannot establish deliberate indifference to a serious medical need, and that the individual defendants enjoy qualified immunity. [ECF No. 21]. The Court agrees, and recommends that defendants' motion be granted.

## II. Background

Dock's complaint names as defendants George Wilson, Jr., M.D., physician assistant (PA) Mario Bayoneto, mid-level provider (MLP) Restituto Pomaloy, William Malatinsky, M.D., and three "John Doe" nurses. [ECF No. 1, PageID.2-3]. Dock alleges that Dr. Wilson prescribed him sertraline in December 2014 for anxiety and posttraumatic stress disorder, but discontinued the prescription after it caused Dock to suffer side effects, including loss of balance, dizziness, heart palpitations, headaches, and rash. [*Id.*, PageID.5-6]. Documents that Dock attaches to his complaint confirm that he suffered side effects from sertraline tablets and that he was feeling increasingly emotional, but do not delineate the other side effects he alleges. [*Id.*, PageID.47-48].

Dock states that, on June 9, 2015, Bayoneto failed to check his medical file and prescribed him Zoloft, which contains sertraline. [*Id.*,

PageID.6]. The note from that encounter states that Dock complained that the medication Buspar was not helping, and that Prozac had given him a bad headache. [*Id.*, PageID.49]. Dock reportedly said that he was "[w]illing to try anything that would work." [*Id.*]. Dock states that, after Bayoneto prescribed him the Zoloft, he experienced the same side effects as when he was previously on sertraline. [*Id.*, PageID.6-7]. Consistent with this allegation, Dr. Wilson's note from a June 17 appointment states that, after Dock was restarted on Zoloft, he had begun "experiencing symptoms of a skin rash with pruritus and heart racing," "felt jumpy," and "had to catch himself from fall[ing] from his bunk[,] injuring his left elbow." [*Id.*, PageID.52].

Dr. Wilson first told Dock that the elbow was fractured and then that an orthopedic consultant said that it was just tendonitis. [*Id.*, PageID.7-9, 53-56]. Dock complained about continued pain, but Dr. Wilson told him that fractures take time to heal, and later that the orthopedic consultant stated that he would treat Dock with a steroid shot if he did not improve. [*Id.*]. Dock was not approved for a steroid shot until November 30, 2015, which he alleged forced him to suffer months of pain and suffering. [*Id.*]. He does note that he had an altercation with another inmate on November 15, 2015. [ECF No. 1, PageID.8-9].

3

Dock states that he developed a rash on his elbow, and asked for medical attention for it on December 4, 2015. [*Id.*, PageID.9, 58-59]. On December 9, 2015, Clinton White, a nurse, notified Pomaloy that Dock wanted medical attention for the rash "at your earliest convenience." [ECF No. 21-7, PageID.213]. In his complaint, Dock alleges that he renewed his request for medical attention on January 4, 2016 and said that his elbow had gotten worse, and that Pomaloy did not examine him until January 8, 2016. [ECF No. 1, PageID.9-10, 58-61]. But defendants' note that, on December 22, 2015, Pomaloy examined Dock and observed excoriations and scars at the left elbow. [ECF No. 21-8, PageID.214-15]. Pomaloy prescribed an ointment and instructed Dock to stop scratching his elbow rashes. [*Id.*].

Dock claims that he told Pomaloy during the January 8 appointment that he was going to file an administrative complaint "concerning the inadequate medical care he had received to date," and that Pomaloy responded, "Who do you think they are going to believe, your black drug dealing ass or me, someone who works here?" [ECF No. 1, PageID.10]. Dock also faults Pomaloy for writing that the skin infection on his elbow had started a week earlier, when in fact it had been a month. [*Id.*, PageID.10, 61]. In his treatment notes, Pomaloy recorded that Dock had tried a

4

hydrocortisone ointment with no improvement. [*Id.*]. Now, Dock had an unspecified local infection, and Pomaloy commented that he had an "inflamed, erythematous area, dry, with fissures and scabbing at the left elbow." [*Id.*]. Pomaloy instructed Dock to "[s]top picking the skin lesion." [*Id.*].

On January 15, 2016, Pomaloy saw Dock and ordered Bacitracin/Polymyxin B ointment for him. [*Id.*, PageID.10, 62]. The following week, on January 22, 2016, Dock submitted wrote a note to Dr. Wilson saying, "You said you was [sic] going to see me about my elbow but you never come to see me. My elbow is kill[ing] me." [*Id.*, PageID.63]. A response written on the bottom the note states that Dock had been seen by the MLP, presumably meaning Pomaloy. [*Id.*, PageID.10, 63]. Also on January 22, Pomaloy examined Dock's left elbow again and found that the infection was resolved. [ECF No. 21-10, PageID.221]. Pomaloy again instructed Dock "to stop picking the scarred area at left elbow." [*Id.*]. Pomaloy also requested that Dr. Wilson review Dock's treatment. [*Id.*].

On January 28, 2016, Dr. Wilson examined Dock's elbow, finding "some discomfort to touch and slight erythema," and no drainage, fever, chills, or limitations in range of motion. [ECF No. 21-11, PageID.223]. Dr. Wilson prescribed ibuprofen for Dock's pain, but no additional antibiotics.

5

[*Id.*, PageID.224].  The following month, after Dock was transferred out of Milan, a PA in another facility examined his elbow, finding significant erythema and inflammation, and diagnosing him with an infection.  [ECF No. 21-13, PageID. 227-28].  The PA prescribed oral antibiotics and Bactracin/Polymyxin B. ointment, and instructed Dock that he must rest his arm and "allow the wound to dry out and scab over in order to heal."  [*Id.*].

Dock was examined again on March 3, 2016 by another PA for his ongoing skin wound and bone spur.  [ECF No. 21-14, PageID.229].  Dock had sores that would not heal, and an x-ray showed a fracture.  [*Id.*, PageID.229-30].  A culture of the elbow was also taken, and it showed no infection.  [*Id.*, PageID.231; ECF No. 21-15, PageID.234].  But Dock was still experiencing pain, swelling and sores that would not heal on his elbow on March 17, 2016, so another culture was taken, and it showed that Dock had a staph infection that was resistant to Bactrim.  [ECF No. 21-16, PageID.240; ECF No. 1, PageID.66].

On May 31, 2016, a note from a general surgery consultation described Dock as having a wound for over two months that had been evaluated frequently, had been cultured, had been treated with antibiotics and by the nursing wound clinic, had improved and worsened, and had never completely closed.  [ECF No. 1, PageID.73].  Another note from an

6

examination described an infection that was "difficult to heal with repeated re-injuries and pressure [due] to the location and size." [*Id.*, PageID.74]. He was diagnosed with a symptomatic olecranon spur with subclinical infection and, on June 10, 2016, underwent surgery to irrigate and debride the left elbow, excise the spur and bursitis, and repair a triceps tendon defect. [*Id.*, PageID.79].

In his complaint, Dock alleges that Wilson failed in his duty to provide adequate medical care, causing him to "suffer needlessly for a prolonged period." [*Id.*, PageID.11.]. He charges that Bayoneto's failed to check his medical file before prescribing him Zoloft, which amounted to deliberate indifference. [ECF No. 1, PageID.6]. Dock accuses Pomaloy of allowing him (Dock) "to languish in pain for an unreasonable period of time and not only exhibiting a total disregard for Plaintiff's prolonged and needless suffering," but also making racially discriminatory remarks to him. [*Id.*, ECF No. 1, PageID.11]. Dock alleges that Malatinsky "failed in his duty by his implied approval, evidenced by his signing off on the many delays and inadequate treatment of Plaintiff." [*Id.*]. The John Doe nurses are accused on allowing Dock "to languish in pain and suffering for an unreasonable period of time." [*Id.*].

7

### III. Analysis

### A.

Defendants' motion is filed under Federal Rules of Civil Procedure 12(b)(6) and 56. A motion to dismiss under Rule 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *Id.* But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and

8

the Court has no duty to create a claim not spelled out in the pleadings. *Freightliner of Knoxville, Inc. v. DaimlerChrysler Vans, LLC*, 484 F.3d 865, 871 n. 4 (6th Cir. 2007).  Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers, but such complaints still must plead a plausible claim for relief. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007); *Davis v. Prison Health Services*, 679 F.3d 433, 437-38 (6th Cir. 2012).

Rule 56(a) states, "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the burden shifts to the non-moving

party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Id.* at 324.

The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). But "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). A scintilla of evidence is also insufficient; "there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252. And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott,* 550 U.S. at 380.

**B.**

Dock's claims under the Federal Tort Claims Act (FTCA) should be dismissed. The FTCA constitutes a limited waiver of the United States' immunity from suit for torts committed by federal employees. *Ellison v. United States,* 531 F.3d 359, 361 (6th Cir. 2008). A precondition for filing a claim under the Act is that the plaintiff exhaust administrative remedies. *Id.* (citing 28 U.S.C. § 2675(a)). The Act also provides two distinct limitations

periods for claims: "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues *or* unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b) (emphasis added). The second limitation period means that a claimant *must* file within six months of agency denial. *Ellison*, 531 F.3d at 363.

Dock failed to meet the second limitations period as he did not file his claim with the court within six months of the denial of his administrative claim. He acknowledges in his complaint that, on October 21, 2016, his administrative claim was denied. [ECF No. 1, PageID.99]. Thus, under Section 2401(b), he had until April 23, 2017 to file his claim. Dock did not file until May 4, 2017, [ECF No. 1], so his FTCA claim should be dismissed.

## C.

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so

11

*properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90, 93 (citation omitted) (emphasis in original). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

A grievance must give "prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006). And each claim and defendant must be considered separately. "A prisoner does not exhaust his administrative remedies when a defendant is not named in the grievance, and the claim against that defendant is a separate claim premised on a separate and independent legal theory." *Bryant v. Forrest,* No. 3:14-01463, 2015 WL 5228045, at *4 (M.D. Tenn. Sept. 8, 2015), *adopted*, 2015 WL 5774650 (M.D. Tenn. Sept. 30, 2015) (citing *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001)).

The Bureau of Prisons has established a three-tiered system for exhausting administrative remedies. 28 C.F.R. §§ 542.10–542.19. First, inmates must attempt to resolve their complaints informally. § 542.13. If that fails, the inmate must file a formal complaint (a BP-9) with the warden

12

within twenty days of the date on which the alleged misconduct occurred. § 542.14(a). If the inmate is not satisfied with the warden's response, he has 20 days to file an appeal with the regional director (BP-10). § 542-15(a). A final administrative appeal of the regional director's response must be made to the general counsel within 30 days (BP-11). *Id.*

Defendants allege that Dock failed to exhaust any claim except that pertaining to the alleged delayed treatment of his elbow rash. [ECF No. 21, PageID.180-83]. The Court agrees. Dock filed his BP-9 form on June 30, 2016, stating that he had an adverse reaction to Zoloft, causing him to fall and fracture his arm; that Dr. Wilson failed to properly treat his injury and changed his diagnosis from a fracture to tendonitis; that he developed a rash and received no wound care; and that the failure to properly treat him caused him to develop an infection, requiring surgery. [ECF No. 21-17, PageID.267-68]. His grievance was denied because he requested a monetary award, and Dock appealed, stating that he was exhausting his remedies before filing a federal court action. [*Id.*, PageID.265-66]. The regional director responded that Dock had been treated properly. [*Id.*, PageID.264]. Dock's appeal of his BP-10 argued that Dr. Wilson told him that he had an elbow fracture, but it does not mention that his treatment for that injury was improper, and does not allege that the fracture was caused

13

by the sertraline prescription. [ECF No. 21-17, PageID 260]. The only wrongdoing Dock described in this appeal was that it took 34 days for him to be evaluated for the infection on his elbow, which caused him to develop a staph infection. [*Id.*]. This last appeal was rejected because the "medical record does not support your allegations it took 34 days for medical to treat you for a skin infection." [*Id.*, PageID.259].

Thus, Dock abandoned his claim that the Bayoneto was deliberately indifferent in prescribing him sertraline. His final appeal mentioned that Dr. Wilson diagnosed him with an elbow fracture, but did not give fair notice of how that diagnosis constituted wrongdoing on Dr. Wilson's part. The only claim properly raised in Dock's final administrative appeal was that the rash on his elbow was not treated timely, causing it to develop into a staph infection. All other claims should be dismissed for failure to exhaust.

### D.

Defendants allege that Dock has not stated a plausible deliberate indifference claim arising out of his elbow rash against any defendant other than Pomaloy, and that those other defendants' request for dismissal should therefore be granted. They also argue that summary judgment should be granted in Pomaloy's favor because the evidence shows that Pomaloy was not deliberately indifferent. The Court concurs.

14

The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits prison officials from inflicting "unnecessary and wanton infliction of pain" upon inmates. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted). "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eight[h] Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A deliberate indifference claim has an objective and a subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The objective component requires a plaintiff to allege that the medical need at issue is "'sufficiently serious.'" *Id.* at 702-03 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703. However, a plaintiff does not have to show that the prison official acted "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Rather, a plaintiff need only show that the official "recklessly

15

disregard[ed]" a substantial risk of serious harm. *Id.* at 836. Defendants' motion focuses on the subjective component of deliberate indifference.

As noted, a plaintiff must plead factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Dock attributes his injuries to each of the defendants—Wilson, Baynoeto, Pomaloy, Malatinsky and the Jane Doe nurses. [ECF No. 1, PageID.15]. But, except for stating that each of the defendants allowed him to languish in pain for an unreasonable period time, Dock's factual allegations attribute the delay in treating his rash to Pomaloy only.[2] [*Id.*, PageID.9-11]. In other words, Dock's factual allegations do not plausibly state a claim that any defendant other than Pomaloy subjectively perceived facts from which to infer substantial risk to Dock, that any of those defendants drew the inference, and that any of them disregarded that risk; he does not satisfy the subjective component. *Comstock*, 273 F.3d at 703.

And although Dock's allegation that Pomaloy delayed in treating his rash may state a plausible claim, summary judgment should be entered in

---

[2] Dock's complaint also alleges that nonparty "Nurse White" delayed notifying Pomaloy of Dock's need for medical attention for five days. [ECF No. 1, PageID.9]. But even assuming that White is one of the Jane Doe nurses, Dock's allegations against him are insufficient to state a claim deliberate indifference, and he has not been served with Dock's complaint.

16

Pomaloy's favor, as the evidence does not show that Pomaloy recklessly disregarded a substantial risk to Dock. Neither Dock's December 4th request for medical attention nor White's December 9th note to Pomaloy that Dock requested a sick call at Pomaloy's "earliest convenience" suggested that Dock needed urgent medical attention for his rash. [ECF No. 1, PageID.58-59]. And while Dock claims that he had to renew his request for medical attention on January 4, 2016, and that Pomaloy did not examine him until January 8, 2016, [ECF No. 1, PageID.9-10, 58-61], the evidence shows that Pomaloy examined Dock and prescribed ointment for him on December 22, 2015. [ECF No. 21-8, PageID.214-15]. Pomaloy examined Dock and prescribed more ointment on January 8 and January 15, and January 22, 2016, and requested that Dr. Wilson review Dock's case after the last of these appointments. [ECF No. 1, PageID.61-62; ECF No. 21-10, PageID.221].

The short delay from White's note to Pomaloy on December 9 to Pomaloy's examination of Dock on December 22 does not establish deliberate indifference on Pomaloy's part. *See Cox v. Hartshorn*, 503 F. Supp. 2d 1078, 1086 (C.D. Ill. 2007) (delay of over a month to treat detainee for rash did not constitute deliberate indifference when there was no indication that his rash needed immediate care). And although Dock

17

eventually developed a staph infection, the evidence does not substantiate Dock's claim that Pomaloy allowed him to languish without attempting to treat his rash; Pomaloy repeatedly examined Dock and prescribed ointments, and then requested on January 22 that Dr. Wilson review Dock's case. If Pomaloy's treatment of Dock was erroneous, that error would constitute no more than negligence. *Ciccone v. Sapp*, 238 F. App'x 487, 491 (11th Cir. 2007) (because nurse prescribed an ointment and made a clinical referral for plaintiff's itching and rash, the nurse was no more than negligent despite some delay in treatment).

A plaintiff bringing a deliberate indifference claim must show more than mere negligence. *Stoudemire v. Michigan Dep't of Corrections*, 705 F.3d 560, 568 (6th Cir. 2013). And when a medical provider "provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock,* 273 F.3d at 703.

For all of these reasons, summary judgment should be granted in favor of Pomaloy with respect to Dock's deliberate indifference claim, and dismissal should be granted in favor of the other defendants. And since Dock has not established that defendants violated his constitutional rights,

18

they are also entitled to qualified immunity. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005) (qualified immunity applies when defendant has not violated a clearly established constitutional right).

**IV. Conclusion**

Defendants' motion to dismiss and for summary judgment **[ECF No. 21]** should be **GRANTED.**

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: August 16, 2018

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 16, 2018.

s/Marlena Williams  
MARLENA WILLIAMS  
Case Manager